# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| SVELTE CONSTRUCTION, LLC, | Case No. 18-CV-1299 (NEB/SER) |
| Plaintiff, | |
| v. | ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT |
| KATHY A. BARAN, Director, U.S Citizenship and Immigration Services; L. FRANCIS CISSNA, U.S. Citizenship and Immigration Services, Director; KIRSTJEN M. NIELSEN, Secretary, Department of Homeland Security, | |
| Defendants. | |

Plaintiff Svelte Construction, LLC ("Svelte") seeks review of the Defendants' denial of its I–129 petition for an L-1A nonimmigrant visa so that its beneficiary, Anthony Chukwuemeka Ufo, may work in the United States as Svelte's CEO for one year. To receive the visa, Svelte has the burden of proving "the intended United States operation, within one year of the approval of the petition, will support an executive or managerial position." 8 C.F.R. § 214.2(l)(3)(v)(C). Both parties have moved for summary judgment. Because there are insufficiently specific facts to prove Ufo would be primarily serving in an executive or managerial capacity, the Court grants the Defendants' motion and denies the Plaintiff's motion.

**BACKGROUND**

Svelte is registered as a limited liability company in Minnesota. [ECF No. 17-1 ("Admin. Rec.") at 69.] Svelte claims to be a subsidiary of Svelte Construction Limited ("Svelte Nigeria"), a Nigerian civil and building construction company.[1] [ECF No. 14 at 2.] In January 2018, Svelte filed a Form I–129 for an L-1A nonimmigrant visa to allow Ufo to be employed within the United States as Svelte's Chief Executive Officer for one year. (Admin. Rec. at 2.) In the petition, Svelte indicated its type of business as "Civil and Building [C]onstruction." (*Id.* at 23.) It also stated it currently has zero employees within the United States and that its address is 222 South 9th Street, Ste. 1600, Minneapolis, MN 55402. (*Id.*)

After Svelte submitted its petition, the U.S. Citizenship and Immigration Services ("USCIS") issued a Request for Evidence ("RFE"), asking Svelte to provide additional documentation to show that its office will support Ufo in a primarily managerial or executive position within one year. (*Id.* at 213–17.) Svelte submitted a response in March 2018, and a week later USCIS issued a decision denying the petition. (*Id.* at 218–447; 2–7.)

Svelte then brought this action, seeking a declaratory judgment under the Administrative Procedure Act ("APA"), 5 USC § 702 et seq., and the Declaratory

---

[1] The Defendants dispute that Svelte is a subsidiary of Svelte Nigeria and argue that the companies "would appear to be at best affiliates under the Code of Federal Regulations." [ECF No. 20 at 5 n.2.] Because this Court has determined Svelte failed to prove the office within the United States could support the beneficiary in a managerial or executive capacity within one year, it need not reach the issue of subsidiary or affiliate relationship.

Judgment Act, 28 U.S.C. § 2201, that Ufo is entitled to the nonimmigrant visa. [ECF No. 1.] Both parties brought motions for summary judgment which are now before this Court. [ECF No. 12, 18.] At the hearing on the cross-motions for summary judgment, held on December 17, 2018, the Court requested supplemental briefing on the issue of whether it had subject matter jurisdiction to review USCIS's decision. Both Svelte and USCIS provided the Court with the requested briefing. [ECF No. 38, 41.]

## I. Subject Matter Jurisdiction

At the outset, the Court considers whether it has jurisdiction to review the denial of the nonimmigrant visa petition. Neither party contests that this Court has jurisdiction, but the Court may address issues of statutory jurisdiction *sua sponte*. *See Irshad v. Johnson*, 754 F.3d 604, 607 (8th Cir. 2014) (courts may but need not address statutory jurisdiction *sua sponte*); *Lukowski v. I.N.S.*, 279 F.3d 644, 646–47, n.1 (8th Cir. 2002); *see also In re Tronox Inc.*, 855 F.3d 84, 95 (2d Cir. 2017); *Diaz v. San Jose Unified Sch. Dist.*, 861 F.2d 591, 594 (9th Cir. 1988). A district court may not review "any . . . decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security. . ." 8 U.S.C. § 1252(a)(2)(B)(ii). This rule applies only to decisions made discretionary by statute, not by regulations. *Kucana v. Holder*, 558 U.S. 233, 246–49 (2010).

3

Svelte requested USCIS classify Ufo as a nonimmigrant alien under 8 U.S.C. § 1101(a)(15)(L), which includes the following requirements:

> [A]n alien who, within 3 years preceding the time of his application for admission into the United States, has been employed continuously for one year by a firm or corporation or other legal entity or an affiliate or subsidiary thereof and who seeks to enter the United States temporarily in order to continue to render his services to the same employer or a subsidiary or affiliate thereof in a capacity that is managerial, executive, or involves specialized knowledge.

8 U.S.C. § 1101(a)(15)(L); INA § 101(a)(15)(L). The admissibility of nonimmigrants through L-1A visas is governed by 8 U.S.C. §1184, which provides that "[t]he Attorney General shall provide a process for reviewing and acting upon petitions under this subsection with respect to nonimmigrants described in section 101(a)(15)(L) within 30 days after the date a completed petition has been filed." 8 U.S.C. §1184(c)(2)(C).

While the Eighth Circuit has not considered the statute at issue in this case, it conducted a similar evaluation in *Ginters v. Frazier*. 614 F.3d 822, (8th Cir. 2010). In *Ginters*, the Eighth Circuit found that the statutory sections governing the Form I–130, Petition for Alien Relative—8 U.S.C. § 1154(b) and (c)—are not discretionary, and can therefore be reviewed. *Ginters*, 615 F.3d at 828–29. The court held that "[t]he use of the word 'shall' in [Sections 1154(b) and (c)] indicates the Attorney General does not have discretion with regard to . . . granting an I-130 petition . . . ." *Id.* The court noted there was no other language in the statute conferring discretion upon the Attorney General, distinguishing the case from other cases where certain determinations were explicitly listed as "within

4

the sole discretion of the Attorney General." *Id.* (citing *Suvorov v. Gonzales*, 441 F.3d 618, (8th Cir. 2006), *Ignatova v. Gonzales*, 430 F.3d 1209, 1213 (8th Cir. 2005), and *Ebrahim v. Gonzales*, 471 F.3d 880 (8th Cir. 2006)). The same analysis applies here. The relevant statute—8 U.S.C. § 1184(c)—states the Attorney General *shall* make a process for reviewing petitions. And, as in *Ginters*, there is no additional language in the statute giving the Attorney General discretion. Without language conferring discretion on the Attorney General, this Court will not read the statute as within the discretion on the Attorney General such that it does not have jurisdiction to review this case.[2]

Several courts outside the Eighth Circuit have agreed with this analysis—determining that 8 U.S.C. § 1184(c)(1) does not preclude judicial review under 8 U.S.C. § 1252(a)(2)(B)(ii) because the language of the statute does not explicitly leave the decision to grant the visa within the sole discretion of Attorney General.[3] *See Fogo De Chao (Holdings) Inc. v. U.S. Dep't of Homeland Sec.*, 769 F.3d 1127, 1138–39 (D.C. Cir. 2014)

---

[2] The same analysis applies to 8 U.S.C. § 1184(a)(1), which more generally provides that "[t]he admission to the United States of any alien as a nonimmigrant shall be for such time and under such conditions as the Attorney General may by regulations prescribe." *See Shah v. Chertoff*, No. 3:05-CV-1608 BH(K)ECF, 2006 WL 2859375, at *6–8 (N.D. Tex. Oct. 5, 2006) (determining that § 1184(a)(1) "contains neither an explicit nor a presumptive grant of discretion to deny extensions of L1-A visas.").

[3] Not all courts have come to this conclusion. *See Glob. Exp./Imp. Link, Inc. v. U.S. Bureau of Citizenship & Immigration Servs.*, 423 F. Supp. 2d 703, 707 (E.D. Mich. 2006) (finding that Section 1184(c) "confers enough discretion to the Attorney General" such that the agency decision is unreviewable).

5

(determining § 1184(c)(1) does not preclude judicial review of a denial of a L-1B visa: "Congress nowhere textually assigned such judgments to the Secretary of Homeland Security's or the Attorney General's sole discretion."); *Hakamudin v. Chertoff*, No. CIV. 4:08-CV-1261, 2008 WL 8444770, at *4 (S.D. Tex. Aug. 18, 2008). (Section 1184(c)(1) "appears to simply designate the Attorney General as the proper official to make such a determination. Devoid of any language specifying the level of deference to be afforded the Attorney General, [the statute] does not preclude judicial review under Section 1252."); *Shah v. Chertoff*, No. 3:05-CV-1608 BH(K)ECF, 2006 WL 2859375, at *5 (N.D. Tex. Oct. 5, 2006) (determining the court had jurisdiction because "§ 1184(c)(1) does not plainly specify discretion"). As these cases note, the language of § 1184(c)(1) appears simply to be instructing the Attorney General to establish regulations; it does not appear to be giving the Attorney General sole discretion to evaluate petitions. Therefore, the Court has jurisdiction to review USCIS's denial of Svelte's petition.

## II.     Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if a factfinder could reasonably determine the issue in the non-moving party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the nonmoving party and give that party the benefit

of all reasonable inferences to be drawn from those facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party "may not rest upon allegations, but must produce probative evidence sufficient to demonstrate a genuine issue [of material fact] for trial." *Davenport v. Univ. of Ark. Bd. of Trs.*, 553 F.3d 1110, 1113 (8th Cir. 2009) (citing *Anderson*, 477 U.S. at 247–49).

Generally speaking, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. A court may set aside an agency's decision if it finds the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2). An agency's decision is arbitrary or capricious if "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *El Dorado Chem. Co. v. E.P.A.*, 763 F.3d 950, 955–56 (8th Cir. 2014)(citation omitted). "The scope of review is 'narrow and a court is not to substitute its judgment for that of the agency.'" *Rauenhorst v. U.S. Dep't of Transp., Fed. Highway Admin.*, 95 F.3d 715, 718–19 (8th Cir. 1996) (citation omitted). At the same time, however, "the agency must explain the rational connection between the facts found and the choice made." *Anderson v. U.S. Dep't of Transp., Fed. Highway Admin.*, 213 F.3d 422, 423 (8th Cir.

2000) (citation and internal quotation marks omitted). The visa applicant has the burden of proof to show he or she is eligible. 8 U.S.C. § 1361.

### III. Review of the Form I–129 Petition

UCIS denied Svelte's Form I–129 petition because Svelte provided insufficient evidence that "the new office will support the beneficiary in a primarily managerial or executive position within one year of approval of the petition." (Admin. Rec. at 2). When bringing an I–129 petition for a nonimmigrant visa, the petitioner must include evidence of a number of requirements, including that the beneficiary will be employed in an executive or managerial capacity. 8 C.F.R. § 214.2(l)(3)(ii). The regulations require the petitioner to include "a detailed description of the services to be performed." *Id.* "Managerial capacity" includes when the employee primarily:

> (1) Manages the organization, or a department, subdivision, function, or component of the organization;
> (2) Supervises and controls the work of other supervisory, professional, or managerial employees, or manages an essential function within the organization, or a department or subdivision of the organization;
> (3) Has the authority to hire and fire or recommend those as well as other personnel actions (such as promotion and leave authorization) if another employee or other employees are directly supervised; if no other employee is directly supervised, functions at a senior level within the organizational hierarchy or with respect to the function managed; and
> (4) Exercises discretion over the day-to-day operations of the activity or function for which the employee has authority.
>
> A first-line supervisor is not considered to be acting in a managerial capacity merely by virtue of the supervisor's

supervisory duties unless the employees supervised are professional.

8 C.F.R. § 214.2(l)(1)(ii)(B). Meanwhile, "executive capacity" includes when the employee primarily:

> (1) Directs the management of the organization or a major component or function of the organization;
> (2) Establishes the goals and policies of the organization, component, or function;
> (3) Exercises wide latitude in discretionary decision-making; and
> (4) Receives only general supervision or direction from higher level executives, the board of directors, or stockholders of the organization.

8 C.F.R. § 214.2(l)(1)(ii)(C).

Additionally, when a petitioner plans to have the beneficiary work in an executive or managerial capacity, the petitioner must submit evidence that:

> (A) Sufficient physical premises to house the new office have been secured;
> (B) The beneficiary has been employed for one continuous year in the three year period preceding the filing of the petition in an executive or managerial capacity and that the proposed employment involved executive or managerial authority over the new operation; and
> (C) The intended United States operation, within one year of the approval of the petition, will support an executive or managerial position as defined in paragraphs (l)(1)(ii)(B) or (C) of this section, supported by information regarding:
>> (1) The proposed nature of the office describing the scope of the entity, its organizational structure, and its financial goals;
>> (2) The size of the United States investment and the financial ability of the foreign entity to remunerate the

> beneficiary and to commence doing business in the United States; and
>
> (3) The organizational structure of the foreign entity.

8 C.F.R. § 214.2(l)(3)(v).

## A. Duties of the Beneficiary

USCIS denied Svelte's petition for two main reasons. First, it determined Ufo's proposed duties of "budgeting," "providing reports," and "managing financial growth" were not "consistent with those typically performed by someone in a managerial or executive position." (Admin. Rec. at 5). USCIS explained that "[t]he duties described are more indicative of an employee who will be performing the necessary tasks to provide a service or to produce a product" and "[a]n employee who primarily performs the tasks necessary to produce a product or provide services is not considered to be employed in a managerial or executive capacity." (*Id.*) Svelte argues that USCIS ignored other job duties that were more consistent with an executive or managerial role—such as "participate in development of the corporation's plans" and "define the vision of the company." [ECF No. 14 at 15.] Even if some of Ufo's duties were managerial or executive in nature, however, the petitioner must prove Ufo's duties as a whole would be *primarily* managerial or executive in nature. Courts have held that the "express language of the regulations excludes workers whose job involves a mix of management and non-management responsibilities." *Shine's Ranch Corp. v. Ridge*, No. CA3:04-CV-2371-R, 2005 WL 1923595, at *3 (N.D. Tex. Aug. 10, 2005); *see also MG Glob. Inv., LLC v. United States*,

No. 3:15CV535/MCR/EMT, 2017 WL 892316, at *3 (N.D. Fla. Feb. 13, 2017), *report and recommendation adopted*, No. 3:15CV535/MCR/EMT, 2017 WL 890089 (N.D. Fla. Mar. 6, 2017) (upholding agency decision to withhold L-1A visa when petitioner did not prove proposed duties would be primarily managerial); *Quality Laundry, Inc. v. Renaud*, No. A-12-CA-681-SS, 2013 WL 12108675, at *5 (W.D. Tex. Apr. 19, 2013) (upholding denial of a L-1A application when beneficiary's duties were more consistent with the duties of an accountant than the duties of a manager).

The mere fact that Svelte included *some* proposed duties that were managerial or executive in nature does not mean Ufo's duties were *primarily* executive or managerial in nature. Svelte did not include sufficiently specific facts or evidence in the petition illustrating Ufo's duties would be primarily executive or managerial.[4] Instead, the facts suggest that Ufo would be conducting the tasks required to produce a product or service. It thus does not appear to be arbitrary, capricious, contrary to law, or an abuse of discretion for USCIS to determine, looking at the record as a whole, that the Svelte office would not support an individual acting in solely a managerial or executive capacity within the course of a year.

---

[4] While Svelte's original proposed duties for Ufo included a percentage breakdown of time spent on each task (Admin. Rec. 68), its revised business plan did not include a similar breakdown. (Admin. Rec. 266–67).

### B. Duties of Subordinates

USCIS also denied Svelte's petition because it was not clear Ufo would be managing supervisory, professional, or managerial employees. (Admin. Rec. at 6.) "A first-line supervisor is not considered to be acting in a managerial capacity merely by virtue of the supervisor's supervisory duties unless the employees supervised are professional." 8 C.F.R. § 214.2(l)(1)(ii)(B). The proposed duties of Svelte's subordinates included making calls, overseeing daily operations of the finance and accounting departments, and being responsible for day-to-day construction operations. (Admin. Rec. at 6.) These duties do not appear to be strictly professional in nature. And Svelte fails to provide any additional explanation as to why they are professional in nature. Without more information, Svelte has not met its burden of proving Ufo would be supervising professional employees.

Even if Svelte's employees are professional in nature, USCIS did not err in denying Svelte's petition because Svelte has clearly failed to show how Ufo's duties will be primarily managerial or executive. *See, e.g.*, *MG Glob. Inv., LLC v. United States*, No. 3:15CV535/MCR/EMT, 2017 WL 892316, at *6 (N.D. Fla. Feb. 13, 2017), *report and recommendation adopted*, No. 3:15CV535/MCR/EMT, 2017 WL 890089 (N.D. Fla. Mar. 6, 2017) (upholding denial of an L-1A visa because "[e]ven if Guven's work with contractors were to be categorized as managerial, this work comprised only one facet of his duties amidst the other day-to-day tasks he performed as described in the AAO's opinion."); *see*

*also Fogo De Chao (Holdings) Inc*, 769 F.3d at 1149 ("Where, as here, an agency has set out multiple independent grounds for a decision, 'we will affirm the agency so long as any one of the grounds is valid, unless it is demonstrated that the agency would not have acted on that basis if the alternative grounds were unavailable.'" (citation omitted)). As a result, it was not arbitrary, capricious, against the law, or an abuse of discretion for USCIS to deny Svelte's petition.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Plaintiff's Motion for Summary Judgment [ECF No. 12] is DENIED;

2. Defendants' Motion for Summary Judgment [ECF No. 18] is GRANTED; and

3. This action is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: March 18, 2019   BY THE COURT:

s/Nancy E. Brasel
Nancy E. Brasel
United States District Judge